1 | Tania L. Whiteleather SBN 141227
Law Offices of Tania L. Whiteleather, Inc.
2 | 5445 E. Del Amo Blvd., Suite 207
Lakewood, CA 90712
3 | tel(562) 866-8755 fax(562) 866-6875
tlwhiteleather@gmail.com
4 |
5 | Attorney for Plaintiff
6 |
7 |
8 |                    UNITED STATES DISTRICT COURT
9 |            FOR THE CENTRAL DISTRICT OF CALIFORNIA
10 |
11 | T.S. a minor, by and through)      Case No.
  | his Guardian Ad Litem,       )
12 | THOMAS SCHNEIDER,            )      Complaint for Partial
  |                              )      Reversal of Due Process
13 |     Plaintiff,              )      Decision and For Payment
  |                              )      Of Reasonable Attorneys
14 |     v.                      )      Fees and Costs and
  |                              )      Request for Supplemental
15 | LONG BEACH UNIFIED SCHOOL    )      Jurisdiction Over State
  | DISTRICT, A Local            )      Breach of Contract Claim
16 | Educational Agency,          )
  |                              )
17 |     Respondent.             )
18 | _____)
19 |     Plaintiff presents his Complaint as follows:
20 |                    **JURISDICTION AND VENUE**
21 |     1.  Plaintiff's action arises under 28 U.S.C. § 1331
22 | and 20 U.S.C. § 1415(i)(3).
23 |     2.  Venue is proper in the Central District of
24 | California pursuant to 28 U.S.C. § 1391(b) because the
25 | Plaintiff and Long Beach Unified School District
26 | ("District") are located within this district and the
27 | claims arose within this district.
28 |     3.  A due process hearing has been held by OAH

pursuant to the Individuals with Disabilities Education Act or "IDEA", <u>Student v. Long Beach Unified School District</u>, Case No. 2021030090; that a Decision was issued by OAH on December 7, 2021.  A copy of that OAH Decision is attached hereto as Exhibit 1.

4. Plaintiff also seeks the Court's exercise of supplemental jurisdiction over a State law claim of breach of contract of a settlement agreement reached by the parties in August 2019.  That agreement provided for the funding by Defendant of an independent educational evaluation or IEE in occupational therapy.  Despite the many requests by Plaintiff for that evaluation, Defendant failed to ever provide it.  In the first Complaint filed with this Court, Plaintiff seeks to reverse an OAH Decision finding that Defendant had not failed to assess T.S. in an area of suspected disability... occupational therapy.  In the OAH Decision, the administrative law judge ("ALJ") found that the parents' signed agreement to such an evaluation was not sufficient to trigger Defendant's duty to assess in a suspected area of disability.

5. In the second OAH Decision, the case underlying this appeal, the administrative law judge found that the parents' email request for an independent evaluation in occupational therapy was not outside of a settlement agreement.  Thus, the ALJ found, there was no request by the parents for that independent evaluation.  In fact, there had been no mediation at in that matter – no

confidential settlement discussions at all.

6.   Plaintiff now asks, in addressing both of the claims/issues regarding the occupational therapy

7.   This complaint is timely filed within ninety (90) days of the issuance of the OAH Decision pursuant to C.E.C. § 56505(k).

**THE PARTIES**

8. T.S. is an fourteen-year-old student with a disability who, at all times relevant to this complaint, has been a student residing in the attendance area of the Long Beach Unified School District ("District").  T.S. is eligible for special education as a student with autism and other disabilities and has been eligible under IDEA and State law for special education his entire school career.

9. THOMAS SCHNEIDER is the father of T.S. and, at all times relevant to this complaint, has, along with T.S.'s mother, been the individuals responsible for T.S.

10.  Defendant LONG BEACH UNIFIED SCHOOL DISTRICT ("District") is, and at all times herein mentioned was a school district duly organized and existing under the laws of the State of California as a Local Educational Agency (LEA).  At all times relevant to this matter, the District has had the sole responsibility as a local educational agency or "LEA" and T.S.'s District of Residence or "DOR," to  provide appropriate education to T.S. as required by IDEA, i.e., the Individuals with Disabilities Education Act, with State law.

3

**COMPLAINT**

11. T.S. is a minor with multiple disabilities, his primary being autism.  In addition, T.S. has disabilities and needs in behavior, academics, Speech/Language, social skills, occupational therapy, and related areas.

12.  Several evaluations have identified T.S.'s cognitive abilities as average.  At the underlying due process hearing, after Plaintiff's experts explained that T.S.'s full-scale cognitive ability or IQ was not appropriate to use as his ability or potential as it measured T.S.'s deficits in language.  A more appropriate score, they testified, would be his non-verbal cognitive scores, which were in the average range.   When District brought in its own expert, a licensed psychologist, that expert agreed that T.S.'s non-verbal cognitive score was the appropriate measure of his potential and ability.

13.  T.S.'s academic and related skills, however, were and are far below average  - not at the level they should be for a student in his grade and with his at-least average ability.  After his years of specialized instruction to address his unique educational needs, T.S. should have made some progress in reading and related academic areas.   In an independent evaluation, Dr. Helena Johnson had reported, in 2019, that T.S. had regressed in all academic areas.

14.  T.S.'s parents filed a due process complaint pursuant to IDEA.  That complaint, filed with the Office of Administrative Hearings as Case No. 2020090441, was

heard on five days in March 2021.  A Decision was issued on May 6, 2021, and T.S. partially prevailed on one issue.  That matter has been appealed to this Court as *T.S. v. Long Beach Unified School District*, Case No CV 21-0627 ODW DFM.

15. In a second due process complaint, T.S.'s parents raised additional, and distinct issues under IDEA:

1)  Did Long Beach fail to timely fund an independent educational evaluation, or file a request for due process hearing to prove the legal sufficiency of its own assessment, after August 19, 2019, when Parent requested an independent educational evaluation in the area of occupational therapy, including sensory processing?

2)  Did Long Beach deny Student a free appropriate public education, called FAPE, within the last two years, by failing to review reports from Pride Learning Center?

3)  Did Long Beach deny Student a FAPE within the last two years, by failing to provide an appropriately ambitious reading program?

4)  Did Long Beach deny Student a FAPE, beginning February 2020, by failing to obtain a second vision therapy evaluation by Dr. Erik Ikeda?

5)  Did Long Beach deny Student a FAPE within the last two years, by failing to provide educational records when requested by Parent?

6)   Did Long Beach deny Student a FAPE, by
     failing to provide services during the 2020
     extended school year?

16. The hearing was held over seven days, and a
Decision was issued on December 7, 2021.  In his
Decision, the administrative law judge ("ALJ") found that
the District had denied T.S. an appropriately ambitious
reading program.  For the remaining issues, which the ALJ
had re-worded, the ALJ found for the District.

17.  The ALJ failed to consider simple facts that
were established at hearing and ignored basic law in
making his findings and Decision:

a) The parents had timely and in writing requested
   an independent educational evaluation of T.S.
   in occupational therapy and sensory integration.
   That request was made outside of any mediation
   or settlement discussions - which were never
   ever held - and was communicated to District's
   in-house counsel.  As a direct result, District
   had a duty to comply with Federal law.  The
   ALJ simply ignored both the facts and the law
   in his determination regarding this issue.

b) Although the District had paid for reading
   services with PRIDE for T.S. as part of a
   prior settlement, the report of T.S.'s
   "progress" in that program was never
   discussed at any IEP team meeting.  Although
   a District employee stated that she thought

that PRIDE had been discussed at an IEP
meeting, she could not identify at which
meeting she believed that had happened.
Further, no IEP notes reflected that any
such discussion had ever occurred, and no
PRIDE service provider was ever included
in any IEP meeting for T.S.

c) As part of the first due process hearing,
T.S. had established that Dr. Ikeda told
the February 2020 IEP team that he had to
conduct more testing to determine <u>how much</u>
vision therapy T.S. required.[1]  At this hearing,
Dr. Ikeda explained that he had not been fully
paid by the District and required an additional
contract from them for T.S.   He testified
that, at the time of his February 2020 report,
he knew that T.S. had glasses because he had
given him glasses weeks before that report.
Further, T.S.'s father testified that he had
attempted to schedule a follow-up appointment
with Dr. Ikeda's office but was told no
appointment would be scheduled until District
had paid Dr. Ikeda.  The agreed-upon follow-up

_____

[1] In the February 2020 IEP meeting, after presenting
his independent evaluation in vision therapy, Dr. Ikeda
was asked by T.S.'s father whether T.S. required vision
therapy.  The District wrote Dr. Ikeda's response into
the February 2020 IEP, "...it would be recommended with
further testing on the need for the length and duration."
That further testing was never provided, through no fault
of the parents.

assessment was never completed.

d) At hearing, the District's own employees testified about summer school attendance and work records, about a District reading program and related testing of T.S. for that program. District employees testified about the existence of such records, but those records, along with actual summer school attendance records for 2020, along with reports of progress on goals and other summer school records (all of which are educational records) were never provided to T.S.'s parents.  The ALJ's finding and determination contradicted the testimony at hearing and the parents rights under IDEA.

e) The parents made multiple requests for educational records, including records of pre- and post assessments of T.S. for any District-provided reading programs, records related to summer school attendance, registration, services, and classwork for 2020, and related educational records.  While a few educational records were provided, many simply were never given to the parents or T.S.'s counsel, despite the District's duty to provide those pursuant to C.E.C. § 56504.  There is no discovery in California OAH due process hearings (See *MC v. Antelope Valley Unified School District,* 852 F.3d 840, 851 (9th Cir. 2017), Without the very

1           records to which they were legally entitled,
2           T.S.'s parents lacked documentation to support
3           their claims.

4   18. The administrative law judge ("ALJ"), overlooking
5 the facts - including District's own educational records
6 and staff testimony - failed to consider the evidence and
7 ignored well-settled Federal and State law regarding the
8 production of educational records under Section 56504.

9   19. Finally, for the one issue the ALJ decided for
10 Plaintiff, the ALJ ordered reimbursement to T.S.'s
11 parents.   The ALJ did not order full reimbursement of
12 the parents' costs for the Davidson Learning Center or
13 "DLC," but, instead, awarded the amount he believed was
14 the appropriate for T.S.'s reading services there.   In
15 fact, the reading services were not available to T.S.
16 without his enrollment and attendance at DLC, where, it
17 was established, he finally made progress in reading.

18   20. The remedy that the ALJ awarded to the parents
19 for the costs of DLC was insufficient and inappropriate
20 and failed to consider what the parents  had had to pay
21 to obtain appropriate reading services for T.S.   The
22 result of the ALJ's ordered reimbursement to the parents
23 of some of their costs for DLC was an incomplete remedy:
24 the parents obtained appropriate reading services, but
25 the partial reimbursement for DLC meant that those
26 services were not "free."

27   21. As was established at hearing, Plaintiff T.S. was
28 denied substantial procedural rights under IDEA, and the

1  District's procedural denials resulted in multiple
2  denials of FAPE for T.S.   Even today, T.S. continues to
3  lag behind his grade-level peers, despite his clear
4  ability to make appropriate educational progress.

5                     **FIRST CAUSE OF ACTION**
6     For Partial Reversal of OAH's December 7, 2021 Decision.

7     22.   Plaintiff incorporates by reference each and
8  every allegation of Paragraphs 1 through 21 of the
9  Complaint as though fully set forth herein.

10    23.   As established by the documentary evidence and
11 testimony at hearing, the District failed to provide both
12 procedural and substantive FAPE to T.S. during the period
13 at issue.   The failure of the ALJ to find for Plaintiff
14 on most of the issues, including his failure to note the
15 facts established and to apply basic IDEA and State law,
16 meant that much of his Decision was neither thorough nor
17 careful and should be overturned in favor of Plaintiff.

18                    **SECOND CAUSE OF ACTION**
19    For Award of Reasonable Attorney's Fees and Costs.

20    24.   Plaintiff incorporates by reference each and
21 every allegation of Paragraphs 1 through 23 of the
22 Complaint as though fully set forth herein.

23    25.   Plaintiff prevailed on one vital issue he raised
24 at hearing – whether he had been provided with an
25 appropriately ambitious reading program.   That issue
26 established that T.S. had been denied a FAPE by
27 District's failure to address the most basic educational
28 skill – reading.   For that issue, and for any other issue

1  reversed by the Court, Plaintiff will file a motion for
2  reasonable attorney's fees based upon his status as a
3  prevailing party.

4
5                    **THIRD CAUSE OF ACTION**

6      For Exercise of Supplementary Jurisdiction Over
       Plaintiff's Caus of Action Breach of Contract.

7      26.   Plaintiff incorporates by reference each and
8  every allegation of Paragraphs 1 through 25 of the
9  Complaint as though fully set forth herein.

10     27.   Plaintiff's parents and Defendant District had
11 entered into an agreement that provided for T.S. to
12 receive an independent educational evaluation ("IEE").
13 An IEE is an independent assessment of a student in an
14 area of suspected disability that may impede or impact
15 his education.  With an IEE, the parent selects someone
16 qualified to conduct the assessment/evaluation, and the
17 parent, not the local educational agency ("LEA"), chooses
18 the assessor.  The assessor must have qualifications to
19 conduct the IEE, but other than that, any qualified or
20 properly licensed professional may be used by the parent.
21 34 C.F.R. § 300.102.

22     28. Despite the written agreement for an IEE, the
23 District failed to take any action to implement its
24 written agreement with the parent.  T.S. never received
25 the necessary assessment (in occupational therapy and
26 SIPT) that the parties had agreed he should receive under
27 IDEA and related regulations.  Instead, the District
28 simply turned a blind eye to T.S. and his unique

1  educational needs.

2      29.  Defendant District has failed to provide the

3  agreed-upon IEE or assessment in occupational therapy,

4  denying Plaintiff and his parents necessary information

5  about this suspected area of need.  Without a formal

6  assessment of T.S. in occupational therapy, the parents,

7  and the IEP team, lack vital information for the planning

8  and identification of services for T.S.'s IEP.

9      30.  The parents are left without any avenue to

10 enforce their written agreement with the District for

11 the IEE in occupational therapy and now seek a finding

12 that the District is in breach of the written agreement

13 to provide T.S. with an IEE in occupational therapy and

14 to address, if so identified, any services T.S. was

15 denied in 2019, 2020, and 2021.

16                    **PRAYER FOR RELIEF**

17    WHEREFORE, Plaintiff requests relief as follows:

18    1. The Court find the portion of the OAH

19       Decision in Case No. 2021030090 that was

20       not in Plaintiff T.S.'s favor to have been

21       neither thorough nor careful and that

22       it failed to address the facts established

23       at hearing as well as the law;

24    2. The Court find that Plaintiff should have

25       prevailed on all his issues at hearing

26       and that reversal of the OAH Decision is

27       appropriate;

28    3. The Court Order full payment of the parents'

1           costs of DLC as appropriate compensatory

2           education for T.S.;

3     4. The Court Order the District to pay Dr. Ikeda

4           any sums due him for T.S.'s assessments and

5           provide T.S. with an independent educational

6           evaluation in the area of vision therapy;

7     5. The Court Order the District to train its

8           staff to comply with C.E.C. § 56504 and IDEA

9           regarding the provision of educational records

10          and with 34 C.F.R. § 300.502(c)(1) and IDEA

11          regarding the consideration of any independent

12          evaluation for the determination of FAPE;

13    6. The Court exercise supplementary jurisdiction

14         over the settlement agreement of August 2019

15         between the parties and find that the District

16         has breached its written agreement with T.S.'s

17         parents in 2019 to provide an independent

18         educational evaluation in occupational therapy

19         and that the District be ordered to provide

20         both that evaluation and compensatory education

21         in that area as will be proven at trial;

22    7. The Court Order payment of reasonable fees

23         and costs to Plaintiff's counsel for her

24         representation of Plaintiff at hearing and

25         in this matter;

26    8. The Court Order such additional relief

27         as the Court determines to be appropriate.

28  Dated: March 4, 2022   By: */s/ Tania L. Whiteleather*
                          TANIA L. WHITELEATHER
                          Attorney for Plaintiff