**O**
**JS-6**

# United States District Court
# Central District of California

<table>
<tr>
<td>

T.S.,

                Plaintiff,

     v.

LONG BEACH UNIFIED SCHOOL
DISTRICT,

                Defendant.

</td>
<td>

Case № 2:22-cv-01491-ODW (DFMx)

**ORDER ON ADMINISTRATIVE
APPEAL**

</td>
</tr>
</table>

## I.    INTRODUCTION

Plaintiff T.S. appeals the decision of the California Office of Administrative Hearings ("OAH") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (*See* Compl., ECF No. 3.) The OAH held that Defendant Long Beach Unified School District ("District") prevailed in full on five of T.S.'s six issues, and T.S. prevailed on one. (Compl. Ex. 1 ("OAH Decision") 35, ECF No. 3-1.) T.S. seeks reversal on two of those issues, and also on the remedy awarded for the issue on which he prevailed. (*See* Opening Br., ECF No. 40.) On June 30, 2023, the Court heard oral argument from the parties. (Mins., ECF No. 47.) For the reasons discussed below, the Court **AFFIRMS** the OAH Decision and finds the District is the prevailing party on all issues which T.S. appeals.

## II.     BACKGROUND

At the time of the administrative hearing at issue ("OAH Hearing"), T.S. was thirteen years old and in the eighth grade.  (Notice of Lodging Admin. R. ("AR") 907 (S-45), ECF No. 35.[1])  T.S. qualifies for special education under the IDEA in the primary category of autism.  (AR 764 (S-11).)  From May 3, 2021, through the OAH Hearing, T.S. attended the Davidson Learning Center ("DLC"), a private school in Huntington Beach, California.  (AR 915 (S-46); OAH Decision 5.)

On August 6, 2019, prior to the disputes at issue in this appeal, T.S. and the District executed a settlement agreement ("Settlement Agreement" or "SA") that resolved all then-existing claims between them concerning T.S.'s educational program, with a few exceptions.   (AR 1081–84 (D-2: SA).)   The Settlement Agreement provided that the District would fund several independent educational evaluations ("IEE"), including a visual processing evaluation by Dr. Eric Ikeda.  (AR 1082 ¶ 3.f.)  The District offered an occupational therapy ("OT") IEE as part of the negotiations, but the parties could not agree on an assessor, so OT was ultimately excluded from the Settlement Agreement.  (AR 1082 ¶ 3.c.)

Although T.S. is not cognitively impaired, he was severely delayed in reading.  (OAH Decision 16, 18.)  T.S. had difficulty reading and made minimal progress on his reading goals.  (*Id.* at 16; *see* AR 767 (S-11: 2019 IEP reading goals), 1014 (D-1: 2018 IEP reading goals), 1133 (D-10: 2020 IEP reading goals).)  By letter on April 12, 2021, T.S.'s parents ("Parents") unilaterally withdrew him from the District.  (AR 1242 (D-31).)   The District requested an IEP team meeting to address their concerns, but Parents declined.  (AR 1243–52 (D-35, D-36, D-38).)  Parents enrolled T.S. at the DLC, which offered an intensive reading program.  (OAH Decision 20; AR 1806 (Test. Davidson).)   In July 2021, T.S. and Parents moved outside of the District's boundaries.  (AR 1278 (D-50), 2495 (Test. T.S.'s Father).)

---

[1] Citations to the AR include the AR page number at each page's top right (*i.e.*, "AR 907") and the exhibit identifier from the OAH Hearing (*i.e.*, "S-45" for Student Exhibit 45 or "D-2" for District Exhibit 2).  Exhibit identifiers may also be followed by exhibit descriptions.

### A.    Prior OAH Case and Appeals

On September 15, 2020, T.S. filed the "Prior OAH Case," No. 2020090441. (Compl. ¶ 14; *see* OAH Decision 5.)   In March 2021, OAH held a five-day hearing and, in May 2021, OAH issued its decision.   (*See* AR 1254 (D-39: Prior OAH Case decision).)   As relevant here, OAH found that T.S. was not entitled to an OT IEE, (OAH Decision 11), and that the District did not deny T.S. a FAPE by failing to provide T.S. with vision therapy services recommended by Dr. Ikeda, (*id.* at 26).

T.S. appealed the decision in the Prior OAH Case and this Court affirmed in full.   *See T.S. v. Long Beach Unified Sch. Dist.* ("*T.S. I*"), No. 2:21-cv-06274-ODW (DFMx), 2022 WL 18280210, at *2 (C.D. Cal. Dec. 13, 2022).   T.S. initially appealed the affirmance to the Ninth Circuit, but has since voluntarily dismissed that appeal. *See* Order Dismiss, *T.S. v. Long Beach Unified Sch. Dist.*, No. 23-55038 (9th Cir. May 16, 2023), ECF No. 10.

### B.    This OAH Case and Appeal

On March 1, 2021, before the hearing began in the Prior OAH Case, T.S. filed another complaint with OAH, Case No. 2021030090, raising six issues ("Second OAH Case").   (*See* Compl. ¶¶ 3, 15; OAH Decision 1–3.)   Those issues were:

1. Did the District "fail to timely fund an [IEE], or file a request for due process hearing to prove the legal sufficiency of its own assessment, after August 19, 2019, when Parent requested an [IEE] in the area of [OT], including sensory processing?"

2. Did the District deny T.S. a FAPE within the last two years, "by failing to review reports from Pride Learning Center?"

3. Did the District deny T.S. a FAPE within the last two years, "by failing to provide an appropriately ambitious reading program?"

4. Did the District deny T.S. "a FAPE, beginning February 2020, by failing to obtain a second vision therapy evaluation by Dr. Eric Ikeda?"

5. Did the District deny T.S. "a FAPE within the last two years, by failing to provide educational records when requested by Parent?"

6. Did the District deny T.S. "a FAPE, by failing to provide services during the 2020 extended school year?"

(OAH Decision 2–3.)  T.S. reasserted some of these same issues from the Prior OAH Case even though the administrative hearing in that case had not yet begun.  (*See id.* at 5, 11, 26.)  OAH heard the Second OAH Case in October 2021 and held that the District prevailed on Issues 1, 2, 4, 5, and 6, and T.S. prevailed on Issue 3, regarding his reading program.  (*See id.* at 1, 35.)  OAH awarded T.S. compensatory education reimbursement in the amount of $14,937 with respect to Issue 3.  (*Id.* at 36.)  Finally, OAH expressly found that T.S. had unreasonably relitigated Issues 1 (OT IEE) and 4 (vision therapy).  (*See id.* at 11, 26.)

T.S. now appeals from the decision in the Second OAH Case.  (Compl. ¶ 23.) T.S. argues for reversal as to Issues 1 (OT IEE) and 4 (vision therapy), and seeks an order requiring the District to pay the full cost of DLC tuition instead of only compensatory education for the reading program.[2]  (*See* Opening Br.; Reply Br., ECF No. 43.)  T.S. lodged the AR and the parties have fully briefed their positions based on that record.  (*See* AR; Opening Br.; Opp'n Br., ECF No. 41; Reply Br.)  The Court denied T.S.'s motion for discovery and to supplement the AR.  (Order Den. Mot., ECF No. 46.)

## III.    LEGAL STANDARD

The IDEA provides that "[a]ny party aggrieved by the findings and decision" reached through the state administrative hearing process "shall have the right to bring a civil action with respect to the complaint . . . in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A).  In reviewing an administrative decision under the IDEA,

---

[2] In his Complaint, in addition to generally seeking reversal of the OAH Decision, T.S. asserts a cause of action for breach of contract regarding the August 2019 Settlement Agreement.  (Compl. ¶¶ 26–30.)  However, in briefing, T.S. raises only Issues 1, 4, and the remedy on Issue 3.  (*See generally* Opening Br.)  As T.S. addresses only these issues in his briefing, he has waived all other issues in this appeal.  *United States v. Bird*, 359 F.3d 1185, 1189 n.1 (9th Cir. 2004) (declining to consider issue on appeal that was not "raised as an issue in appellant's opening brief"); *All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427, 1434 (9th Cir. 1993) ("Failure to raise the issue in the opening brief waived that issue on appeal.").

district courts review the administrative proceeding records, hear additional evidence if the parties request it, and "grant such relief as the court determines is appropriate," based on the preponderance of the evidence.   20 U.S.C. § 1415(i)(2)(C).   This modified *de novo* standard requires the court to give the administrative proceedings "due weight" and not "substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995).   After such consideration, the district court "is free to accept or reject the findings in part or in whole." *Id.*; *M.C. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 n.1 (9th Cir. 2017) (noting that courts must "actually examine the record to determine whether it supports the [administrative law judge's] opinion").

The appeal of an IDEA administrative decision may be properly styled and presented by the parties in a summary judgment format. *Wartenberg*, 59 F.3d at 892. A court may make a final judgment based on the preponderance of evidence, in what is essentially a bench trial on a stipulated record. *Id.*; *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993).   The petitioning party bears the burden of proof at the administrative hearing, *Schaffer v. Weast*, 546 U.S. 49, 62 (2005), and the party challenging the administrative decision bears the burden of persuasion in the district court, *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 910 (9th Cir. 2009).

## IV.     DISCUSSION

Preliminarily, the parties disagree regarding the level of deference the Court should afford the OAH Decision on appeal.   (Opening Br. 7; Opp'n Br. 9–11.) Substantively, T.S. seeks reversal of the OAH Decision on three points.   (*See* Opening Br. 7–14.)  First, T.S. argues the District had a duty to fund an OT IEE or file a due process complaint because the District knew that T.S.'s parents suspected OT as an area of disability and had requested an OT IEE (Issue 1).   (*Id.* at 7–9.)  Second, T.S. argues the District had a duty to provide for a second vision therapy assessment by

Dr. Ikeda (Issue 4).   (*Id.* at 10–11.)   Finally, T.S. argues the remedy awarded on Issue 3, compensatory education reimbursement for DLC's reading program, is inadequate and the Court should award Parents the full cost of the DLC placement plus transportation costs.   (*Id.* at 11–14.)   The District responds that the Court should affirm the OAH Decision in all respects.   (*See* Opp'n Br. 6.)

**A.     Deference Due**

A court must give "due weight" to administrative judgments regarding educational policy.   *Ojai*, 4 F.3d at 1472.   How much weight is due is a matter of the court's discretion, though the Ninth Circuit instructs that more weight should be given if the findings are "thorough and careful," *Wartenberg*, 59 F.3d at 891, or pertain to witnesses' credibility, *Amanda J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 889 (9th Cir. 2001).   Specifically, an administrative law judge's ("ALJ") decision is entitled to "substantial weight" when it "evinces [their] careful, impartial consideration of all the evidence and demonstrates [their] sensitivity to the complexity of the issues presented."   *Ojai*, 4 F.3d at 1476.

OAH held the administrative hearing over seven days, (OAH Decision 1); received testimony from twelve witnesses, (*see* AR 734 (Witness List)); considered hundreds of pages of argument and evidence, (*see* AR 683–731 (briefs), 739–1296 (evidence)), and actively engaged with questioning, (*see generally* AR 1433–2724 (transcripts)).   The ALJ issued a thirty-seven-page decision in which he thoroughly examined the evidence and arguments, rendered reasoned credibility determinations, reviewed the relevant legal standards, and found in favor of each party on carefully articulated issues.   (*See generally* OAH Decision.)   The Court therefore finds the OAH Decision is thorough and careful and, accordingly, entitled to deference.   *See R.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 942 (9th Cir. 2007) ("[A] hearing officer's findings [are] thorough and careful when the officer participates in the questioning of witnesses and writes a decision containing a complete factual background as well as a discrete analysis supporting the ultimate conclusions."

(cleaned up)).  Moreover, the Court gives substantial weight to the ALJ's credibility determination, that Parents "were not reliable witnesses and little weight was given to their testimony for any issue."  (OAH Decision 9); *Amanda J.*, 267 F.3d at 889.

Accordingly, the Court finds the OAH Decision is entitled to substantial deference.

**B.    OT IEE—Issue 1**

T.S. seeks reversal of OAH's finding on Issue 1, that the District did not fail to timely fund an OT IEE "after August 19, 2019, when Parents requested the [IEE], or to timely file a due process complaint to defend its own assessment in this area."  (OAH Decision 35.)

The IDEA requires a school district to assess a student "in all areas of suspected disability."  *See* 20 U.S.C. § 1414(b)(3)(B); 34 C.F.R. § 300.304(c)(4).  Once a school district is on "notice that a child has displayed symptoms of a . . . disability," the district must assess the child to determine the child's educational needs.  *See Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1118–20 (9th Cir. 2016).  If a parent disagrees with a school assessment of their child, they have a right to obtain an IEE at public expense.  *Id.* at 1111; 20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.502(b)(1)–(2).  When a parent disagrees with a school assessment and requests an IEE, the school district must either "file or fund," that is, file a due process complaint to establish the propriety of its assessment or fund the requested IEE.  *Baquerizo v. Garden Grove Unified Sch. Dist.*, 826 F.3d 1179, 1185 (9th Cir. 2016).

Failure to conduct a timely or appropriate assessment is a procedural violation.  *Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1031–33 (9th Cir. 2006).  A procedural violation may amount to a denial of a FAPE if it "result[s] in the loss of educational opportunity, or seriously infringe[s] the parents' opportunity to participate in the IEP formulation process, or . . . cause[s] a deprivation of educational benefits."  *J.G. v. Baldwin Park Unified Sch. Dist.*, 78 F. Supp. 3d 1268, 1284 (C.D. Cal. 2015) (quoting *Amanda J.*, 267 F.3d at 892).

On appeal, T.S. argues that the OAH Decision on Issue 1 is contrary to the law and evidence and that the District had a duty to fund an OT IEE or file an OAH complaint to defend its position because the District knew Parents suspected OT was an area of disability based on Parents' OT IEE request.  (Opening Br. 7–9.)

A preponderance of the evidence supports that the District did not fail to "file or fund" an OT IEE.   To trigger this duty, a parent must disagree with a school assessment of their child.  20 U.S.C. § 1415(b)(1); *see Timothy O.*, 822 F.3d at 1111. Here, however, Parents never disagreed with a school OT assessment.  The District had not previously assessed T.S. in the area of OT, so there existed no school OT assessment with which Parents could have disagreed.  Moreover, the record reflects that Parents did not request an OT IEE outside of the August 2019 Settlement Agreement negotiations.  The only evidence T.S. cites to support his contention, that Parents requested an OT IEE, are emails from his attorney to the attorney for the District discussing and rejecting possible OT assessors with respect to the August 2019 settlement.  (Reply Br. 6 (citing AR 1002–03 (S-58)).)  Even accepting the attorney email as a parent request for an OT IEE, the email is dated August 3, 2019, and thus precedes the expressly limited timeframe of this issue: "after August 19, 2019."  Finally, although T.S's father ("Father") testified that he requested an OT IEE during the February 2020 IEP meeting, the IEP meeting notes do not substantiate his testimony.  (*Compare* AR 2498 (Test. Father), *with* AR 1147–53 (D-10: Feb. 2020 IEP notes).)  In any event, the ALJ found that Father was not a reliable witness, so the Court gives Father's testimony little weight.  (*See* OAH Decision 9.)  In sum, T.S. offers no credible evidence to support the assertion that Parents requested an OT IEE after August 19, 2019.

T.S. argues that the District nevertheless had a duty to fund the OT IEE because T.S.'s parents raised OT as an area of concern during settlement negotiations. (Opening Br. 9; Reply Br. 6–7.)  The law requires a school district to assess in all areas of suspected disability once the school district is on notice that a child has

*displayed symptoms* of that disability.  *Timothy O.*, 822 F.3d at 1118–20; *see* 20 U.S.C. § 1414(b)(3)(B).  The law does *not* require a school district to assess in all areas in which a parent wants an assessment.  T.S. points to nothing in the record that suggests the District observed any OT or sensory integration issues, and the IEP notes do not reflect that T.S.'s parents ever raised related concerns at IEP team meetings.

The authority T.S. offers for the proposition that "when an area is a suspected disability and not assessed by a district, the parent may seek and obtain an [IEE] as a remedy for the district's failure," (Opening Br. 8 (cleaned up)), is unpersuasive.  T.S. cites *Los Angeles Unified Sch. Dist. v. D.L.*, 548 F. Supp. 2d 815 (C.D. Cal. 2008). The case is inapposite.  The court in *D.L.* did *not* reach the question of "whether the district was 'duty-bound' to provide an IEE" upon merely the parent's request.  *Id.* at 820–21.  In contrast, the court clearly held that D.L. was "not entitled to an [IEE] at public expense unless LAUSD has provided an assessment and D.L. disagrees with the assessment," and that, because "LAUSD never provided an assessment of D.L.," LAUSD was *not* statutorily obligated to fund an IEE.  *Id.*  Finally, although the court in *D.L.* ultimately ordered LAUSD to fund the IEE at issue, it did so pursuant to its equitable authority and "based on factors beyond the parent's request," including that the request was for an initial special education assessment and that D.L. exhibited behavior issues in school.  *Id.* at 822.  The factors that led the court in *D.L.* to exercise equitable discretion are not present here: the OT IEE is not an initial special education assessment and nothing in the record suggests that T.S. exhibited symptoms indicating OT or sensory processing were areas of suspected disability.[3]

Finally, although T.S. argues the issue here is different from the issue in the Prior OAH Case concerning an OT IEE, the Court finds that the issues are materially

---

[3] T.S.'s citation to the *Letter to Baus*, 65 IDELR 81 (OSEP Feb. 23, 2015), is equally unpersuasive. T.S. relies on this letter for the same proposition, that a parent may seek and obtain an IEE when the district fails to assess upon a parent's request alone.  The advisory letter from the Office of Special Education Programs does not support T.S.'s position, nor does it in any way vitiate the requirement that a parent disagree with a prior school evaluation to trigger a district's obligation to either file a complaint and defend its own assessment or fund an IEE.

identical, and that this is the second time T.S. has litigated this issue.[4]  He raised this issue in the Prior OAH Case and did not prevail.  (*See* OAH Decision 11.)  He argued these same points on appeal before this Court in *T.S. I*, and again did not prevail.  *See T.S. I*, 2022 WL 18280210, at *6–8.  T.S. offered similar evidence in the Prior OAH Case as in the Second, and asserted similar arguments in the first district court appeal as he raises here now.  In light of this Court's holding in *T.S. I*, and the similarity of the issues, arguments, and evidence, the Court affirms OAH's additional finding that "Issue 1 lacked any merit whatsoever and it was unreasonable for [T.S.] to continue litigating this issue."  (OAH Decision 11.)

In sum, the Court finds that a preponderance of evidence supports the ALJ's conclusion that the District was neither required to conduct an OT assessment nor to fund an OT IEE.  The Court also finds that T.S.'s relitigating this issue was unreasonable and without merit.  Accordingly, the Court **AFFIRMS** the OAH Decision on Issue 1 in full.

**C.    Second Vision Therapy Assessment—Issue 4**

Next, T.S. seeks reversal of OAH's finding on Issue 4, that the District did not deny T.S. a FAPE "by failing to obtain a second vision therapy evaluation" by Dr. Ikeda.  (OAH Decision 35.)  Because

When a parent obtains an IEE and gives it to the school district, the school district must consider the IEE in any decision made with respect to the provision of a FAPE to the child, so long as the evaluation meets specified criteria.  34 C.F.R. § 300.502(c); Cal. Educ. Code § 56329(b)–(c).  When presented with an IEE, a school district need only review and consider the report; it need not follow its

---

[4] At oral argument, T.S. attempted to distinguish Issue 1 here as concerning a *request* for an OT IEE while the issue in the Prior OAH Case concerned the District's knowledge of OT as an *area of suspected disability*.  T.S. is splitting hairs, and undermines any purported distinction with his argument that the District was obligated to fund an IEE since OT was "an area of suspected disability simply because the parents had requested assessment in that area."  (Opening Br. 9.)  Regardless, for the reasons above, any purported distinction is without a difference for the purposes of this appeal.

recommendations unless the student needs the recommendations to access his education.   *See Park*, 464 F.3d at 1032 (finding no procedural violation based on vision assessment where vision was not hindering student's education).

On appeal, T.S. argues OAH's finding on Issue 4 is contrary to the evidence and the District was obligated to send Dr. Ikeda a contract for a second assessment and subsequent services.  (Opening Br. 10–11.)

A preponderance of the evidence supports the OAH Decision on Issue 4. Pursuant to the Settlement Agreement, the District funded a visual therapy assessment by Dr. Ikeda.  (AR 1082 ¶ 3.f. (D-2: SA).)   In October 2019, Dr. Ikeda conducted the assessment; he presented his results telephonically at the February 2020 IEP meeting. (AR 1147 (D-10: IEP), 2078–79 (Test. Ikeda).)   Dr. Ikeda's Report reflects that he recommended T.S. try "accommodative support glasses" as a first step in addressing visual processing deficits, and follow up thereafter to assess T.S.'s response to treatment.  (AR 1091 (D-5: Ikeda Report), 1147 (D-10: IEP), 2084–88, 2098 (Test. Ikeda).)   As required by the IDEA, the IEP team considered Dr. Ikeda's Report at the February 2020 IEP team meeting.  (*See* AR 1147 (D-10:IEP)); 34 C.F.R. § 300.502(c). When Father asked at that meeting whether T.S. required vision therapy services, Dr. Ikeda responded that he would need a follow-up assessment to make that determination.   (AR 1147 (D-10: IEP).)   After all, it had been four months since Dr. Ikeda recommended support glasses and he thus lacked current information regarding whether his initial treatment plan had been successful.  The record does not support T.S.'s assertion that Dr. Ikeda's response amounted to a recommendation for a "second vision therapy evaluation."

Even if Dr. Ikeda had recommended a second vision therapy evaluation, the law does not require a school district to implement an IEE assessor's recommendations unless the student needs the recommended accommodation to access his education. *See Park*, 464 F.3d at 1032.  Here, the record does not support that T.S. needed vision

therapy services or another vision therapy assessment to access his education, and particularly not only months after the first assessment.  (*See* OAH Decision 25.)

Finally, as with Issue 1, this is the second time T.S. has litigated this issue concerning Dr. Ikeda's further assessment and services.  T.S. raised this issue in the Prior OAH Case and appeal.  *See T.S. I*, 2022 WL 18280210, at *2, 8–9.  T.S. did not prevail on this issue before OAH or on appeal before this Court.  *Id.*  In light of the Court's holding in *T.S. I*, and the similarity of the issue, arguments, and evidence raised here, the Court affirms OAH's additional finding that "it was unreasonable for [T.S.] to protract litigation for this issue."  (OAH Decision 26.)

In sum, the Court finds that a preponderance of evidence supports the ALJ's conclusion that the District was not required to provide a second vision therapy evaluation by Dr. Ikeda.  The Court also finds that T.S.'s relitigating this issue was unreasonable and meritless.  Accordingly, the Court **AFFIRMS** the OAH Decision on Issue 4 in full.

**D.     Remedy—Issue 3**

OAH held that T.S. prevailed on Issue 3, and that the District denied T.S. a FAPE "within the last two years, by failing to provide an appropriately ambitious reading program."  (OAH Decision 35.)  Accordingly, OAH awarded compensatory education reimbursement in the sum of $14,937, for the costs Parents incurred for reading-related services at DLC.  (*Id.* at 36.)  Although T.S. sought this compensatory education as the remedy from OAH, T.S. now seeks reversal of that remedy and an order that the District must fund the full cost of the DLC placement.  (*Compare* AR 729–30 (T.S. OAH Closing Br.), *with* Opening Br. 11–14, *and* Reply Br. 7–10.)

Where a district has violated the IDEA, courts have broad discretion in crafting "appropriate" relief.  20 U.S.C. § 1415(i)(2)(C)(iii); *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009); *see Town of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985) (finding the IDEA confers "broad discretion" on the court to "grant such relief as [it] determines is appropriate" (alteration in original)).  "Compensatory

education is an equitable remedy that seeks to make up for educational services the child should have received in the first place, and aim[s] to place disabled children in the same position they would have occupied but for the school district's violations of IDEA." *R.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1125 (9th Cir. 2011) (internal quotation marks omitted); *see Park*, 464 F.3d at 1034 (finding no abuse of discretion where OAH and the district court awarded compensatory education service to student in the form of additional training to his teachers).

Here, OAH did not abuse its discretion in awarding the costs of DLC's reading program as compensatory education on Issue 3.  T.S.'s parents incurred costs of $65 per hour for placement and instruction at DLC, with a total tuition cost of $24,895 for the time period at issue.  (AR 918–40 (S-47: DLC Invoices).)  Dr. Christine Davidson, the owner and director of DLC, testified that approximately 60% of the DLC program addressed reading and 40% addressed other curricula.  (AR 1781 (Test. Davidson).)  Accordingly, the evidence established that Parents incurred $14,937, or 60% of the total cost, for reading-related services at DLC.  OAH was well within its "broad discretion" to award this sum as compensatory education.  *Burlington*, 471 U.S. at 369; *see also R.P.*, 631 F.3d at 1125 ("[I]t may be a rare case when compensatory education is not appropriate to remedy an IDEA violation." (internal quotation marks omitted)).

On appeal, T.S. re-frames this issue as one of "appropriate placement," and seeks full reimbursement for his unilateral private placement at DLC, including the full cost of tuition and transportation, arguing that he would not have been able to access the reading program without full placement at DLC.  (Opening Br. 11–14.) First, Dr. Davidson testified that DLC offers tutoring to students not fully enrolled, contradicting T.S.'s argument.  (AR 1816 (Test. Davidson).)  More significant, though, is that "appropriate placement" was not the issue before OAH.  OAH made no finding that the District failed to offer an "appropriate placement" or that the DLC placement was a proper one.  Rather, OAH found only that the District failed to provide T.S. an

appropriately ambitious reading program during the time period at issue, and that T.S. made progress with DLC's reading program.   (OAH Decision 35–36.)   Thus, awarding compensatory education for the costs of the reading program was well within OAH's broad discretion.

Finally, even considering the issue as reimbursement for a unilateral private "placement," the IDEA authorizes courts to "reduce[] or den[y]" such reimbursement in light of "all relevant factors."   20 U.S.C. § 1412(a)(10)(C)(iii); *Forest Grove*, 557 U.S. at 247.  As such, OAH would have been well within its "broad discretion" to reduce the amount of reimbursement.  *Burlington*, 471 U.S. at 369.

The Court finds that a preponderance of evidence supports the ALJ's award of compensatory education reimbursement in the amount of $14,937, for reading-related services at DLC.  The Court also finds that the ALJ did not abuse his discretion in awarding this remedy on Issue 3.   Accordingly, the Court **AFFIRMS** the OAH Decision as to the award of $14,937 in compensatory education reimbursement for Issue 3.

## V.    CONCLUSION

For the reasons discussed above, the Court **AFFIRMS** the OAH Decision on all issues T.S. raises and finds the District is the Prevailing Party on appeal.

**IT IS SO ORDERED.**

July 13, 2023

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**